No. 26-1736

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

ZENAIDA PEREZ,
*Plaintiff-Appellant*,

v.

FAIRFAX COUNTY SCHOOL BOARD, ET AL.
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 1:25-cv-2126-AJT-IDD

# APPELLANT'S REPLY BRIEF

STEVEN H. ADEN
*Counsel of Record*
DANIELLE G. PIMENTEL
AMERICANS UNITED FOR LIFE
1150 Connecticut Ave., N.W., Ste. 500
Washington, DC 20036
(703) 638-9731
steven.aden@aul.org
danielle.pimentel@aul.org

MONIQUE A. MILES
OLD TOWNE ASSOCIATES, P.C.
201 N. Union Street, Ste. 110
Alexandria, Virginia 22314
(703) 519-6810
mmiles@oldtowneassociates.com

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 2

I. The District Court Improperly Dismissed Mrs. Perez's Whistleblower Claim Under FAWBPA (Count II) .......... 2

A. The District Court Erred by Stripping the Complaint of Intervening, Concrete Retaliatory Disciplinary Actions, Which Demonstrates a Temporal Bridge Between Perez's Reports and the Defendants' Retaliation .......... 2

B. The Intervening Decision in *Martin v. City of Waynesboro* Is Neither Conclusive of Virginia Law nor a Basis for Final Judgment Against the Appellees .......... 8

II. The District Court Improperly Dismissed Mrs. Perez's Free Speech Claims (Counts IV–V) .......... 10

A. Mrs. Perez Properly Alleged a First Amendment Retaliation Claim .......... 10

1. Mrs. Perez Was Entitled to First Amendment Protection When She Spoke as a "Private Citizen" Prior to August 2025 .......... 10

i. The Mandated Reporter Framework Does Not Translate Whistleblowing into an Ordinary Job Duty under *Garcetti v. Ceballos* .......... 11

ii. The Choice of an Internal and Private Forum Does Not Negate First Amendment Protections .......... 12

iii. The Objective Public Character of the Speech Defeats the Appellees' Reductive Arguments .......... 13

iv. Whistleblower Protection Does Not Mandate Immediate Disclosure of Raw Source Material to a Conflicted Public Employer .......... 14

2. The Complaint Does Not Allege Any Disruption of Mrs. Perez's Workplace, and So Her Speech Must Be Presumed Protected .......... 15

3. The Complaint Alleges Retaliation Caused by Protected Speech .......... 17

B. Based on the Allegations of the Complaint, an Objective School Administrator Should Have Known Their Conduct Violated Mrs. Perez's Right to Free Speech .......... 19

CONCLUSION .......... 23

CERTIFICATE OF COMPLIANCE .......... 24

CERTIFICATE OF SERVICE .......... 25

# TABLE OF AUTHORITIES

**Cases**


*Adams v. Trs. of the Univ. of N.C.-Wilmington*,
640 F.3d 550 (4th Cir. 2011)....................12, 21, 22

*Arvinger v. Mayor & City Council of Balt.*,
862 F.2d 75 (4th Cir. 1988)....................14

*Barbour v. Garland*,
105 F.4th 579 (4th Cir. 2024) ....................2

*Barnhill v. Bondi*,
138 F.4th 123 (4th Cir. 2025) ....................2

*Brooks v. Arthur*,
685 F.3d 367 (4th Cir. 2012)....................13

*Campbell v. Galloway*,
483 F.3d 258 (4th Cir. 2007)....................13

*Crouse v. Town of Moncks Corner*,
848 F.3d 576 (4th Cir. 2017)....................10, 14

*Doriety for Estate of Crenshaw v. Sletten*,
109 F.4th 670 (4th Cir. 2024) ....................15

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)....................1, 11, 12

*Givhan v. W. Line Consol. Sch. Dist.*,
439 U.S. 410 (1979)....................12

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016)....................17

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)....................20

*Holloway v. Maryland*,
32 F.4th 293 (4th Cir. 2022) ....................................................................3, 7

*Hope v. Pelzer*,
536 U.S. 730 (2002) ..........................................................................................20

*Johnson v. Balt. City*,
163 F.4th 808 (4th Cir. 2026) .............................................................................6

*Kirby v. City of Elizabeth City*,
388 F.3d 440 (4th Cir. 2004)...............................................................................14

*Lane v. Franks*,
573 U.S. 228 (2014) ................................................................................11, 12, 13

*Lettieri v. Equant Inc.*,
478 F.3d 640 (4th Cir. 2007)..................................................................3, 5, 8, 19

*Love-Lane v. Martin*,
355 F.3d 766 (4th Cir. 2004)........................................................................15, 21

*Martin v. City of Waynesboro*,
926 S.E.2d 516 (2026), *appeal docketed*, No. ___ (Va. Oct. 7, 2026) .......8, 9

*Massaro v. Fairfax Cnty.*,
95 F.4th 895 (4th Cir. 2024) ...........................................................................6, 13

*Mellen v. Bunting*,
327 F.3d 355 (4th Cir. 2003)...............................................................................20

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*,
391 U.S. 563 (1968) ....................................................................................16, 20

*Ridpath v. Bd. of Governors of Marshal Univ.*,
447 F.3d 292 (4th Cir. 2006)...............................................................................21

*Tutt v. Wormuth*,
No. 19-2480, 2021 WL 4076729 (4th Cir. Sept. 8, 2021) ..............................3

*West v. Am. Tel. & Tel. Co.*,
311 U.S. 223 (1940) .......... 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) .......... 7, 16, 17

**Statutes**

Va. Code Ann. § 16.1-241(W) (2026) .......... 14

Va. Code Ann. § 2.2-3010 (2016) .......... 8

Va. Code Ann. § 2.2-3010.1 (2016) .......... 9

Va. Code Ann. § 2.2-3011 (2014) .......... 8

**Federal Rules**

Fed. R. Evid. 201(b) .......... 16

Fed. R. Evid. 802 .......... 17

Fed. R. Evid. 805 .......... 17

## SUMMARY OF ARGUMENT

The district court improperly dismissed Plaintiff-Appellant Zenaida Perez's claims under the Virginia Fraud and Abuse Whistleblower Protection Act (FAWBPA) and her constitutional claims for retaliation under the United States and Virginia constitutions. Mrs. Perez pled an ongoing campaign of retaliation against her as a result of her reports of illegal behavior to her supervisors, and these allegations established the requisite temporal bridge between her reports and the Appellees' retaliation. A decision of the Virginia Court of Appeals holding that the School Board is not liable under the FWBPA statute is not determinative of the question, as the decision's interpretation nullified the express statutory text of the statute, and moreover, is currently under review in the Virginia Supreme Court.

The district court also improperly dismissed Mrs. Perez's free speech claims. Her speech was clearly protected under *Garcetti v. Ceballos,* 547 U.S. 410 (2006), because she reported illegal conduct, a matter of obvious public concern. Furthermore, her interest in exposing illegal conduct involving minors obviously outweighed Defendant-Appellees' interest in workplace efficiency, especially because the Second Amended Complaint does not allege that her speech caused any operational or administrative disruption to her workplace. Further, her speech was protected regardless of whether it was made in an internal and private forum or a public forum. Finally, there is hardly any principle more clearly established in

constitutional law than that state officers may not retaliate against state employees based upon speech made on matters of public concern. Accordingly, the district court erred in dismissing Mrs. Perez's FAWBPA and free speech claims.

# ARGUMENT

## I. The District Court Improperly Dismissed Mrs. Perez's Whistleblower Claim Under FAWBPA (Count II).

### A. The District Court Erred by Stripping the Complaint of Intervening, Concrete Retaliatory Disciplinary Actions, Which Demonstrates a Temporal Bridge Between Perez's Reports and the Defendants' Retaliation.

The Appellees erroneously claim that paid administrative leave in October 2025 was the sole adverse action alleged. (Appellees' Resp. Br. 21.) This is flatly contradicted by the Second Amended Complaint, which details a progressive sequence of institutional disciplines causing concrete economic and professional injuries. (JA 135–45.)

Causation may be established through a pervasive, regular sequence of intervening events demonstrating hostility toward protected activity, even without close temporal proximity. *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025). Regular intervening retaliatory conduct bridges a temporal gap by forming a visible progression toward the ultimate adverse action. *Barbour v. Garland*, 105 F.4th 579, 593–94, 597 (4th Cir. 2024) (bridging the gap by invasive questioning, stalled applications, and reopened background checks); *Lettieri v. Equant Inc.*, 478 F.3d

640, 650–51 (4th Cir. 2007) (bridging the gap by systematically stripping responsibilities to render a role redundant). Intervening comments by a supervisor may likewise temper an otherwise insufficient temporal gap when considered together with timing and allegations of pretext. *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022); *see also Tutt v. Wormuth*, No. 19-2480, 2021 WL 4076729, at *2 (4th Cir. Sept. 8, 2021) (finding a plaintiff's complaint detailed "his supervisors' repeated comments regarding [the plaintiff's] protected activity and events occurring prior to the adverse action" which sufficiently provided a causal connection between the protected activity and employer's adverse notwithstanding the sixteen-month time period).

The pleadings describe a continuous causal loop under *Lettieri* and *Barbour*, beginning immediately upon Mrs. Perez's protected activity and accelerating into a campaign of professional degradation. Before her reports, Mrs. Perez was a popular, well-respected veteran educator with over thirty years of experience who received sterling performance reviews. (JA 136–37.) Mrs. Perez engaged in multiple internal disclosures to school administrators between May and November 2022. (JA 132.) Upon confronting Principal Chad Lehman in person on November 22, 2022, with a minor student's statement detailing a covert, school-facilitated abortion, (JA 133–34), Lehman summarily dismissed the claim via email in thirty-five minutes (JA

134), prompting an immediate email response from Mrs. Perez explicitly clarifying that a school social worker covertly facilitated the minor's abortion. (JA 133.)

Immediate hostility ensued. Principal Lehman initiated a campaign of personal animosity and shunning, refusing to ever again greet or acknowledge her and actively avoiding her in the hallways from the very day of that disclosure. (JA 135–36.) Just as the supervisor remarks in *Holloway* and *Tutt* supplied a critical link to survive a motion to dismiss by revealing immediate administrative hostility, Principal Lehman's instantaneous behavioral pivot served as an overt manifestation of animus that began the retaliatory campaign.

Appellees claim that Mrs. Perez's workload increase was separated by a nine-month lapse, (Appellees' Resp. Br. 25), but this ignores the standard operational structure of a public school calendar, where a single school year's assigning cycle carries directly into the next. Because the 2022–23 teaching schedules were already set at the time of her November report, the school's very next available opportunity to alter her employment status occurred ahead of the 2023–24 school year, when administrators saddled her with an excessively burdensome and inequitable teaching workload compared to the comparator ESOL instructors. (JA 136.) The targeted nature of this ongoing hostility was explicitly acknowledged by her immediate manager, George Parker, who told her, "I know what they have been doing to you." (JA 137.)

Following the 2023–24 academic year, administrators directly targeted Mrs. Perez's professional credentials by accelerating her "Summative Evaluation" cycle, imposing it an entire year earlier than standard regulations permitted to manufacture a pathway for heightened oversight. (JA 136–37.) They further targeted her schedule by arbitrarily structuring mandatory meetings and demanding text responses while she was on designated vacation and paid time off. (JA 137.) This systematic alteration of her instructional duties mirrors the retaliatory actions outlined in *Lettieri*, where supervisors bridged a multi-month temporal gap by stripping the plaintiff of significant job responsibilities to diminish her professional standing before final termination. 478 F.3d at 650–51. By targeting Mrs. Perez's schedule and disproportionately inflating her workload above her peers at the very first institutional opening, the Appellees engaged in the exact type of restructuring of responsibilities that the Fourth Circuit has recognized as a causal bridge.

Crucially, the district court's causation analysis completely ignored the formal, unpaid suspension imposed on May 1, 2025, which caused a concrete loss of pay and drastically narrows the timeline. (*Compare* JA 006–08 *with* JA 142–43.) Appellees repeatedly describe administrative leave as the only adverse employment action, but Count II expressly identifies both the unpaid suspension and administrative leave as adverse actions. Mrs. Perez renewed her report on March 7, 2025, revealing to FCPS outside counsel that Lehman had actively covered up the

student-abortion facilitation. (JA 141.) FCPS suspended her weeks later on May 1, routing the disciplinary message directly to Fulton and other senior officials. (JA 142–43.) On May 2, she provided an investigator with names and details corroborating her allegations. (JA 143.) Her claim does not depend on proximity to her 2022 reports; it rests on tightly coupled protected disclosures and severe disciplinary actions occurring throughout 2025.

By October 2025, Mrs. Perez was subjected to an intensifying pattern of twelve separate disciplinary memoranda or reprimands following her disclosures. (JA 148.) This case stands in stark contrast to *Johnson v. Baltimore City*, where the alleged retaliatory acts predated the protected complaint and lacked a continuing pattern afterward. 163 F.4th 808, 821 (4th Cir. 2026). It is also distinguished from *Massaro v. Fairfax County*, where an eight-month silent gap completely separated the complaint from the first hint of retaliation. 95 F.4th 895, 903 (4th Cir. 2024). Here, Lehman's immediate shunning of Mrs. Perez formed an instant link, (JA 135–36), and subsequent administrators Brown and Healey ignited a rapid progression of severe discipline within weeks of gaining actual knowledge via an email exchanges on January 16–17, 2025, (JA 138–39).

Most damaging to Appellees' reliance on *Massaro* is their claim that the chain was broken because subsequent administrators like Brown and Healey did not know about her 2022 reports to Lehman. (Appellees' Resp. Br. 27.) The record explicitly

documents that the moment Brown and Healey gained actual knowledge via the forwarded email exchanges on January 16–17, 2025, an intense, rapid progression of severe disciplinary actions ignited within mere weeks. (JA 138–39.)

This animus is explicitly confirmed by Assistant Principal Brown's January 2025 statement. Upon receiving Mrs. Perez's forwarded complaint from Healey, Brown announced: "Now I have to add more to Ms. Perez's Reprimand." (JA 138–39.) This statement directly correlates knowledge of her reporting to an immediate increase in discipline, serving as a textbook causal bridge under *Holloway*, 32 F.4th at 300. Within weeks, Brown locked a student in his office in an attempt to pressure the student to provide information against Mrs. Perez, (JA 141), fabricated a charge that she hid a student in her room on March 12, 2025, (JA 141–42), attempted to entrap her into policy violations using an 18-year-old male student, (JA 142), stripped her of courses and lesson plans in April 2025, (JA 142), executed a formal suspension on May 1, 2025, (JA 142–43), reshuffled her schedule in May 2025, (JA 143), monitored her personal communications on the school server, (JA 143–44), and falsely criticized her in front of her own class of students on August 25, 2025, (JA 144).

Whether these cascading events were legitimate administrative responses or components of an active campaign of retaliation is a question of fact that cannot be resolved by selecting Appellees' reductive explanations on a motion to dismiss. *Zak*

*v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015). Because Mrs. Perez has pleaded an immediate onset of animus followed by an escalating, highly documented progression of financial and professional injuries, *Massaro* is not dispositive. Appellees' effort to isolate each event also misses the theory of the complaint. A recurring-animus analysis asks whether the sequence, considered as a whole, plausibly connects protected activity to later discipline. *See Lettieri*, 478 F.3d at 650–51. Mrs. Perez alleges both repeated reports and repeated employment consequences. The pattern became more severe, not more remote, and culminated in unpaid leave imposed minutes after another public report.

### B. The Intervening Decision in *Martin v. City of Waynesboro* Is Neither Conclusive of Virginia Law nor a Basis for Final Judgment Against the Appellees.

Appellees invoke the intermediate appellate decision in *Martin v. City of Waynesboro*, 926 S.E.2d 516 (2026), *appeal docketed*, No. ___ (Va. Oct. 7, 2026), as an absolute statutory bar to Count II. (Appellees' Resp. Br. 30–31.) However, this defense is not settled.

First, *Martin* relies on a highly technical, isolated reading of Virginia Code § 2.2-3011 (2014). By treating the terms "employer" and "governmental agency" as mutually exclusive categories, the *Martin* panel completely nullified the express statutory text of Virginia Code § 2.2-3010 (2016), which defines an "employer" to include an "agent of the governmental agency." *Martin*, 926 S.E.2d at 525. Because

a local school board is a corporate body that can only execute formal personnel actions through its designated supervisory officials, those officials act as its direct agents. *Martin* fails to reconcile how a public entity can actively wield institutional authority to punish a whistleblower while completely evading corporate accountability under the very act designed to stop it. *See id.* at 523–25.

Second, the statutory construction announced in *Martin* is currently under review by the Supreme Court of Virginia. *Martin*, 926 S.E.2d, *appeal docketed*, No. ___ (Va. Oct. 7, 2026). Under the *Erie* doctrine, intermediate state appellate rulings are not conclusive if convincing evidence shows the state's highest court would rule otherwise. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). Because *Martin* introduces internal contradictions into a remedial statute, the Supreme Court of Virginia is likely to reject it. *Compare Martin*, 926 S.E.2d at 525 (defining "employer" and "governmental agency" as mutually exclusive to arrive at the conclusion that sovereign immunity is only waived for individual supervisors and not the public agencies they represent), *with* Va. Code Ann. § 2.2-3010.1 (2016) (prohibiting a "governmental agency" from threatening, discriminating, or retaliating against whistleblowers). This Court should defer final judgment or stay the statutory claim pending that determination.

Alternatively, if this Court is inclined to accord controlling deference to *Martin's* current interpretation, Mrs. Perez respectfully requests that the Court

remand Count II with instructions to the district court to grant leave to amend the complaint. Because the Individual Defendants (Lehman, Healey, Brown, and Reid) have been active parties to this suit from its inception, (JA 2, 4), amending Count II to explicitly name them as individual statutory "employers" creates absolutely no prejudice. They have had full notice of the underlying facts, investigative files, and retaliation claims throughout the entire lifecycle of this litigation.

## II. THE DISTRICT COURT IMPROPERLY DISMISSED MRS. PEREZ'S FREE SPEECH CLAIMS (COUNTS IV–V).

The district court erred in dismissing Counts IV and V because Mrs. Perez sufficiently alleged a First Amendment retaliation claim and showed that the individual Appellees are not entitled to qualified immunity.

### A. Mrs. Perez Properly Alleged a First Amendment Retaliation Claim.

Mrs. Perez sufficiently alleged that (1) she "was speaking as a citizen upon a matter of public concern," (2) her interest in speaking on the matter of public concern "outweighed" defendants' interest in workplace efficiency and (3) her "speech caused the disciplinary action." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (citations omitted).

#### 1. *Mrs. Perez Was Entitled to First Amendment Protection When She Spoke as a "Private Citizen" Prior to August 2025.*

Mrs. Perez was speaking as a private citizen when she made her internal reports of unlawful abortion activity, which was not a part of her ordinary day-to-

day duties. Furthermore, Mrs. Perez's speech did not concern a personal grievance but rather was focused on student welfare and alleged illegal conduct involving minors. She consistently reported this illegal conduct to school authorities at least seven times across multiple years. (JA 132–33, JA 141, JA 143, JA 145.) Thus, her speech is protected under the First Amendment.

i. The Mandated Reporter Framework Does Not Translate Whistleblowing into an Ordinary Job Duty under *Garcetti v. Ceballos*.

The Appellees err by arguing that because Mrs. Perez was a mandated reporter, her disclosures were part of her ordinary day-to-day job duties and therefore unprotected. (Appellees' Resp. Br. 34–36.) Speech does not turn into unprotected work product simply because it concerns information acquired during public employment or touches upon general obligations shared by public servants. *Lane v. Franks*, 573 U.S. 228, 238–40 (2014). A general background statutory directive or employment policy cannot transform extraordinary whistleblowing into an "ordinary job responsibilit[y]." *Id.* If any background reporting policy could convert citizen speech into official-duty speech, public employers could retroactively strip all First Amendment protections from whistleblowers simply by creating blanket rules requiring employees to report misconduct.

Under *Garcetti*, courts look past written guidelines to what an employee actually does on a day-to-day basis. *Garcetti*, 547 U.S. at 424–25; *Lane*, 573 U.S. at

239–40. Mrs. Perez's ordinary duties as an ESOL teacher include language instruction, lesson planning, language testing, and curriculum execution. (*See* JA 136.) Uncovering and reporting a third-party co-worker's systemic facilitation of student abortions without parental consent falls entirely outside the scope of classroom language instruction. Because this speech was not part of the standard duties she was hired, paid, and evaluated to perform, she spoke as a private citizen. *Lane*, 573 U.S. at 240. Furthermore, the Fourth Circuit firmly recognizes that topics like abortion "plainly touch[] on issues of public, rather than private, concern." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 565 (4th Cir. 2011).

ii. The Choice of an Internal and Private Forum Does Not Negate First Amendment Protections.

Appellees also make much of the fact that Mrs. Perez's disclosures prior to August 2025 were internal and private. But a public employee does not forfeit First Amendment protection simply by choosing to communicate privately with their supervisor rather than airing grievances publicly. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979). Appellees mistake the forum of the speech for its functional nature. Although *Garcetti* limited public employee speech made "pursuant to their official duties," the Court explicitly preserved protection for private speech when it cited *Givhan* to note that First Amendment protection can apply even when the speech is made "inside [the] office, rather than publicly." *Garcetti*, 547 U.S. at 420–21. The framework hinges on why the speech was made,

not where or to whom it was delivered. *Lane*, 573 U.S. at 238. If a report is made privately but is outside the employee's regular day-to-day job duties, it remains protected. *Id.*

iii. The Objective Public Character of the Speech Defeats the Appellees' Reductive Arguments.

The Appellees misapply Fourth Circuit doctrine by substituting a speaker's perceived subjective motivation for the objective public-concern test. They assert that because Mrs. Perez's report followed a workplace dispute over student pregnancy tests, her speech was a purely personal, unprotected "tit-for-tat" squabble under *Brooks v. Arthur*, 685 F.3d 367 (4th Cir. 2012), and *Massaro*, 95 F.4th 895. (Appellees' Resp. Br. 38–39.) However, friction at the genesis of a complaint does not erase First Amendment coverage when a single expression encompasses both personal irritation and systemic misconduct. *Campbell v. Galloway*, 483 F.3d 258, 269–71 (4th Cir. 2007).

Moreover, although purely internal workplace grievances regarding promotions or performance metrics do not constitute speech on matters of public concern under *Massaro* or *Brooks*, an employee's speech retains its protected citizen status when its objective content addresses systemic, institutional misconduct. Unlike the plaintiffs in the Appellees' cited cases, Mrs. Perez did not speak out to alter her salary, change her classroom assignment, or "improve [her] own station." *Massaro*, 95 F.4th at 906. Rather, she sought to "participate in a larger public

dialogue" regarding student welfare and official misconduct, which is a textbook matter of public concern. *Crouse*, 848 F.3d at 585. Specifically, she spoke out to report that a public school social worker was systematically facilitating medical procedures for minor students under the school's custody without parental notification or consent, which is a direct violation of Virginia law. *See* Va. Code Ann. § 16.1-241(W) (2026). The objective community interest is demonstrated by the immediate investigations launched by the Virginia State Police, the U.S. Department of Education (DOE), and the U.S. Senate Health, Education, Labor, and Pensions (HELP) Committee. Speech commanding such regulatory and law enforcement intervention cannot be minimized as a personal workplace squabble. *See Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004); *Arvinger v. Mayor & City Council of Balt.*, 862 F.2d 75, 79 (4th Cir. 1988).

#### iv. Whistleblower Protection Does Not Mandate Immediate Disclosure of Raw Source Material to a Conflicted Public Employer.

The Appellees next argue that because Mrs. Perez did not instantly surrender her raw audio recordings and witness transcripts to Principal Lehman in November 2022, she lacked the intent of a private citizen addressing a public concern. (Appellees' Resp. Br. 37–38.) This imposes an extra-legal standard. Under Civil Procedure Rule 12(b)(6), the court must accept all well-pleaded facts as true and draw all inferences in the plaintiff's favor. *Doriety for Estate of Crenshaw v. Sletten*,

109 F.4th 670, 679 (4th Cir. 2024). Mrs. Perez explicitly alleged that she directly reported the substantive details of the unauthorized minor abortions to Lehman in person on November 22, 2022. (JA 132–33.) She had no statutory obligation to immediately turn over her raw files to an administration that immediately sought to dismiss her claims as a "baseless attack". Whistleblowers frequently protect source materials to shield them from administrative destruction or swift employer retaliation. Far from sitting on this evidence, the complaint shows Mrs. Perez raised these allegations to school authorities at least seven distinct times across multiple years, utilizing proper internal channels continuously until external public escalation became her final option (JA 132–33, JA 141, JA 143, JA 145).

#### 2. *The Complaint Does Not Allege Any Disruption of Mrs. Perez's Workplace, and So Her Speech Must Be Presumed Protected.*

The Appellees' claim, (Appellees' Resp. Br. 41–52), that workplace efficiency outweighed Mrs. Perez's speech interests fails because the Second Amended Complaint does not allege that her speech caused *any* operational or administrative disruption to her workplace. (JA 129–57.) At the Rule 12(b)(6) stage, review is strictly confined to the four corners of the complaint. Where a pleading alleges no workplace disruption, the *Pickering* balance must heavily favor the employee. *Love-Lane v. Martin*, 355 F.3d 766, 779 (4th Cir. 2004) (finding that the *Pickering* test weights in favor of the employee, even though her speech "caused some disharmony at the . . . school," because the speech "did not affect the ability

of administrators and teachers at [the school] to deliver their educational services" and did not "diminish the quality of education being provided" to the students); *see generally Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 574 (1968) ("[A]bsent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment.").

To manufacture a narrative of "disharmony" and "disruption," the Appellees invite this Court to step entirely outside the pleadings and rely on extraneous, unverified documents. (JA 161–310.). Specifically, they rely on preliminary internal letters from Superintendent Dr. Michelle Reid and their own uncorroborated reports submitted to the U.S. DOE and the U.S. Senate HELP Committee. This is an improper attempt to convert a preliminary motion to dismiss into a premature motion for summary judgment without discovery. *Zak*, 780 F.3d at 606 .

Nor can these documents be admitted under the doctrine of judicial notice. Under Federal Rule of Evidence 201(b), a court may only take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" because it is either generally known within the court's territorial jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The core purpose of the judicial notice rule is to bypass formal proof *only* for facts that possess an indisputable cachet of inherent credibility, such as public statutes,

immutable scientific timelines, or verified court dockets. Rule 201 strictly forbids a court from taking judicial notice of unverified statements made by a party to an administrative body simply because those statements happen to be typed out on government stationery. *Zak*, 780 F.3d at 607.

Furthermore, these administrative reports are inadmissible hearsay and double hearsay under Federal Rules of Evidence 802 and 805, consisting of unsworn, unverified summaries of what administrators claim third-party witnesses stated during an internal probe. (JA 144, JA 146.) While a court may look to an incorporated document to understand a defendant's subjective "view of events," it cannot accept those self-serving assertions as independent facts to destroy an otherwise plausible complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 168 (4th Cir. 2016). Because the complaint contains zero allegations of operational impairment, (JA 129–57), the *Pickering* balance remains firmly in Mrs. Perez's favor at this stage of litigation.

*3. The Complaint Alleges Retaliation Caused by Protected Speech.*

The Appellees' temporal attenuation argument completely distorts the pleadings by isolating Mrs. Perez's initial 2022 reports to argue that too much time elapsed to infer causation. (Appellees' Resp. Br. 21–24.) The Second Amended Complaint explicitly details that Mrs. Perez did not speak once in 2022 and remain silent; rather, she engaged in protected reporting activity at least seven distinct times

across multiple years, confronting multiple Assistant Principals, successive Principals, Employee Relations investigators, and external legal counsel (JA 132–33, JA 141, JA 143, JA 145).

Specifically, (1) on May 5, 2022, she reported verbally to Assistant Principals Parker and Wenzel that a school social worker was providing minor students with abortion assistance, (JA 132); (2) on May 13, 2022, she documented these allegations in a written memorandum sent to school officials, including Principal Chad Lehman, (JA 132); (3) on June 9, 2022, she sent a follow-up email to Principal Lehman reiterating the social worker's involvement in student pregnancy situations, (JA 132); (4) on November 22, 2022, she confronted Principal Lehman face-to-face with explicit details of a specific student abortion facilitated outside the knowledge of the legal guardian, (JA 132–33); (5) in March 2025, she disclosed to outside counsel representing FCPS that the social worker facilitated student abortions and that Principal Lehman covered it up, (JA 141); (6) in May 2025, she reiterated the specific abortion facilitation allegations during an interview with an FCPS Employee Relations investigator (JA 143); and (7) on October 20, 2025, she made public disclosures regarding the systemic coercion of minor girls into abortions during a national webinar, minutes before being placed on administrative leave at 9:06 PM that same evening (JA 146).

Under *Lettieri*, the multi-year gap between the initial disclosure and the final administrative leave decision is successfully bridged by a regular, intervening progression of professional and economic disciplines. 478 F.3d at 650–51. Furthermore, by narrowing the temporal gap to a matter of mere minutes following her October 20, 2025 public broadcast, the complaint sets forth a temporal link that satisfies the prima facie burden of causation. Whether the Appellees' cascading disciplinary actions across this timeline were legitimate personnel decisions or components of an active retaliatory campaign is a question of fact that cannot be resolved on a motion to dismiss. Mrs. Perez has comfortably cleared her pleading hurdle, and the district court's causation ruling must be reversed.

In sum, Mrs. Perez's speech prior to August 2025 was protected by the First Amendment, Mrs. Perez did not allege workplace disruption in her complaint, and Mrs. Perez pled retaliation against her protected speech. Accordingly, she properly alleged a First Amendment retaliation claim.

### B. Based on the Allegations of the Complaint, an Objective School Administrator Should Have Known Their Conduct Violated Mrs. Perez's Right to Free Speech.

The individual Appellees are not entitled to qualified immunity. (Appellees' Resp. Br. 32–33, 53–66.) As noted above, Mrs. Perez sufficiently alleged that the Appellees violated her constitutional right to speak as a private citizen on a matter of public concern, *i.e.*, unlawful abortion activity involving minor students. Mrs.

Perez also established that Appellees' violation was of a "clearly established . . . constitutional right[] of which a reasonable person would have known." *See Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Notably, Mrs. Perez does not need to point to precedent involving materially identical facts in order to show her right is clearly established in the law. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting that Supreme Court precedent "makes clear that officials can be on notice that their conduct violates established law even in novel factual situations."). Individual Appellees just needed a "fair warning" that their treatment towards Mrs. Perez was unconstitutional. *Id.* at 740. Both the Supreme Court and the Fourth Circuit precedent provided Appellees with this requisite warning, solidifying that Mrs. Perez's right to speak against the unlawful abortion activity was a clearly established right that FCPS officials should have known.

First, the Supreme Court in *Pickering* acknowledged that "[t]he public interest in having free and unhindered debate on matters of public importance—the core value of the Free Speech Clause of the First Amendment—is so great that" the Supreme Court held "a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Pickering*, 391 U.S. at 573–74. This case had been precedent over fifty years at the time Mrs. Perez made her initial reports in 2022.

Second, Fourth Circuit precedent has also found that (1) a reasonable superintendent would have been aware of a teacher's right to speak against race discrimination towards elementary school children, *Love-Lane*, 355 F.3d at 784; (2) reasonable school administrators would have been aware of a professor's right to criticize the University's handling of an investigation, *Ridpath v. Bd. of Governors of Marshal Univ.*, 447 F.3d 292, 320–21 (4th Cir. 2006); and (3) reasonable school administrators would have been aware of a professor's right as "a public employee to speak as a citizen on matters of public concern," including on the topic of abortion, *Adams*, 640 F.3d at 565–66.

Appellees attempt to distinguishing *Love-Lane* and *Ridpath* merely because the facts are not identical to Mrs. Perez's case, imposing a stricter standard than this Court has set for the clearly-established-law inquiry.[1] Yet, both cases provide fair warning that a public employee in the educational context has a right to speak on a matter of public concern, such as unlawful activity of other employees, and cannot be retaliated against for engaging in that protected speech.

---

[1] It should be noted that in order to argue that the "Individual Defendants Could have *reasonably believed* that Perez's accusations arose out of personal grievance," (Appellees' Resp. Br. 60 (emphasis in original)), the Appellees once again attempt to rely on documents that are outside of the complaint, such as their own reports to the Senate HELP Committee and DOE, which were improperly before the district court. (JA 039–040). The district court also seemed to erroneously rely on these reports in rendering its decision. (JA 012). As stated above, these documents are not properly before this Court and should not have been factored into the district court's analysis in deciding Appellees' motion to dismiss. (*See also* JA 039–040.)

Appellees conveniently fail to address *Adams*. In *Adams* this Court found that an associate professor's speech, which addressed topics including abortion, was a matter of public concern and was protected under the First Amendment. 640 F.3d at 565. Similar to Mrs. Perez, the underlying right that the plaintiff asserted that the school violated was his right as "a public employee to speak as a citizen on matters of public concern." *Id*. 566. This Court found that this right "is clearly established and something a reasonable person in the Defendants' position should have known was protected," denying qualified immunity. *Id*. This Court decided *Adams* in 2011, eleven years before Mrs. Perez made her first report of abortion-related misconduct.

Given both Supreme Court and this Court's precedent, the Individual Appellees should have known that they cannot retaliate against Mrs. Perez for speaking on a matter of public concern, *i.e.*, unlawful abortion assistance to minor students without parental knowledge or consent.

Ultimately, Mrs. Perez sufficiently alleged a First Amendment retaliation claim. When viewed in the light most favorable to Mrs. Perez, the facts show that 1) Mrs. Perez spoke as a private citizen at all times when making her reports of unlawful abortion activity, 2) her speech did not disrupt the workplace, and 3) she was retaliated against because of her speech. Mrs. Perez also sufficiently alleged that the Appellees violated her constitutional right to speak as a private citizen on a matter of public concern, *i.e.*, unlawful abortion activity, and that her right was

clearly established in the law to where reasonable school officials in individual Appellees' positions should have known their retaliation was unlawful. Thus, the individual Appellees are not shielded from liability through qualified immunity, and the district court erred in dismissing Counts IV and V.

## CONCLUSION

Plaintiff-Appellant respectfully asks this Court to reverse the district court's grant of Defendant-Appellees' motion to dismiss and remand with instructions to allow this case to proceed to discovery pursuant to Rule 16(b) of the Federal Rules of Civil Procedure.

Dated: November 4, 2026

Respectfully submitted,

/s/ Steven H.Aden
Steven H. Aden
*Counsel of Record*
Danielle G. Pimentel
AMERICANS UNITED FOR LIFE
1150 Connecticut Ave., N.W.,
Ste. 500
Washington, DC 20036
(703) 638-9731
Steven.Aden@aul.org
Danielle.Pimentel@aul.org

Monique A. Miles
OLD TOWNE ASSOCIATES, P.C.
201 N. Union Street, Ste. 110
Alexandria, Virginia 22314
(703) 519-6810
mmiles@oldtowneassociates.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because it contains 5,282 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using 14-point Times New Roman.

Dated: November 4, 2026

*/s/* Steven H. Aden
Steven H. Aden
*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2026, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Dated: November 4, 2026

/s/ Steven H. Aden
Steven H. Aden
*Counsel for Plaintiff-Appellant*